# UNITED STATES DISTRICT COURT
## DISTRICT OF MINNESOTA

| | |
|---|---|
| Bryan A.G.D., | Civ. No. 26-2366 (JWB/EMB) |
| Petitioner, | |
| v. | |
| Todd Blanche, *Acting Attorney General, United States Department of Justice*; Markwayne Mullin, *Secretary, U.S. Department of Homeland Security*; Todd M. Lyons, *Acting Director of Immigration and Customs Enforcement*; and David Easterwood, *Field Office Director, St. Paul Field Office, U.S. Immigration and Customs Enforcement*, | **ORDER ON PETITION FOR WRIT OF HABEAS CORPUS** |
| Respondents. | |

Mary M. Nikolai, Esq., Gustafson Gluek PLLC, counsel for Petitioner.

David W. Fuller, Esq., and Jaymarie Arlene Miranda, Esq., United States Attorney's Office, counsel for Respondents.

Petitioner Bryan A.G.D. is a noncitizen who was detained within the United States and remains in custody without any opportunity to seek release on bond. This case presents a narrow question: whether a noncitizen who was previously released into the United States, lived in the community for over three years while working and raising a family, and was later re-detained as an applicant for admission may continue to be held without any meaningful opportunity to obtain an individualized determination regarding the justification for his continued detention.

The governing statute authorizes detention of noncitizens classified as applicants

for admission. But statutory authority to detain does not itself resolve whether the manner in which that authority is exercised satisfies the Due Process Clause. Whether the Constitution requires additional process under the circumstances presented here is a separate question. On the facts of this case, the answer is to provide Petitioner with a prompt bond hearing.

## BACKGROUND

Petitioner is a citizen of Ecuador. (*See* Doc. No. 1, Petition ¶¶ 2, 21, 26; Doc. No. 7, Minner Decl. ¶ 4.) He entered the United States without inspection on October 31, 2022, near El Paso, Texas. (Petition ¶¶ 2, 27; Minner Decl. ¶ 4.) After being apprehended and processed by the United States Border Patrol, Petitioner was issued an I-94 parole document and released into the country. (Petition ¶¶ 2, 26–27; Minner Decl. ¶ 4; Doc. No. 7-4, Resp. Ex. D at 1–2, 5.) The I-94 lists an expiration date of January 4, 2023, and cites "282(d)(5)," which appears to be a reference to humanitarian parole under 8 U.S.C. § 1182(d)(5). (Resp. Ex. D at 5.)

Petitioner listed his initial destination as Queens, New York. (Resp. Ex. D. at 15–16.) He now resides in Minneapolis with his partner and children, near other members of his family. (Petition ¶ 29.) He spends time working, attending church, and caring for his children. (*Id.* ¶¶ 2, 27, 29, 47.) His criminal history includes a 2023 shoplifting arrest from New Jersey with an unknown disposition, and a March 2025 charge of improper entry under 8 U.S.C. § 1325(a)(1) from the Western District of Texas. (*Id.* ¶ 30; Minner Decl. ¶¶ 5–6.)

Petitioner alleges that he was arrested by local police in Eden Prairie, Minnesota,

while on his way to work on April 25, 2026. (Petition ¶¶ 4, 10, 21, 28, 31.) He alleges that the officers did not cite a statutory basis to detain him, told him that he would be transferred to Immigration and Customs Enforcement ("ICE") custody, and then took him to the Eden Prairie Jail. (*Id.* ¶¶ 28, 31.)

ICE states that it took Petitioner into custody in Minneapolis on April 27, 2026, after he appeared in federal court on his improper entry charge and was ordered released from federal custody on an appearance bond. (Minner Decl. ¶¶ 6–7.) Petitioner was served with an I-200 administrative warrant the same day. (*Id.* ¶ 7; Doc. No. 7-1, Resp. Ex. A.) He was served with a Notice to Appear the next day, April 28, 2026, charging him as being present without admission or parole, and as lacking a valid entry document. (Minner Decl. ¶ 8; Doc. No. 7-2, Resp. Ex. B.)

Petitioner remains detained at the Sherburne County Jail in Elk River, Minnesota. (Resp. Ex. B. at 4.)

## DISCUSSION

### I.    Legal Standard

A writ of habeas corpus may issue where a petitioner is in custody in violation of the Constitution or federal law. 28 U.S.C. § 2241(c)(3). Petitioner bears the burden of establishing, by a preponderance of the evidence, that his detention lacks a lawful basis. *See Aditya W. H. v. Trump*, 782 F. Supp. 3d 691, 703 (D. Minn. 2025) (collecting cases).

Petitioner argues that his detention is unlawful because it violates the Due Process Clause of the Fifth Amendment. (Petition ¶¶ 33–48.) He also claims that his detention violates the Fourth Amendment and the statute and regulations governing warrantless

immigration arrests. (*Id.* ¶¶ 49–56.)

The Petition challenges only the legal basis for Petitioner's present detention. It does not challenge the initiation of removal proceedings, the validity of any removal order, or the execution of removal. Jurisdiction therefore lies under 28 U.S.C. § 2241 to review the legal basis for custody. *See, e.g.*, *Mohammed H. v. Trump*, 786 F. Supp. 3d 1149, 1154–55 (D. Minn. 2025). Because the Petition challenges only Petitioner's detention, and not his removability or any removal order, the statutory jurisdiction-channeling provisions do not apply. *See Jennings v. Rodriguez*, 138 S. Ct. 830, 841 (2018).

## II.    Analysis

### A.    Statutory Detention Authority

Respondents assert that Petitioner is an applicant for admission and must be detained without a bond hearing under 8 U.S.C. § 1225(b)(2)(A).

Section 1225 applies to "applicants for admission," defined as a noncitizen "present in the United States who has not been admitted or who arrives in the United States." *See* 8 U.S.C. § 1225(a). Section 1225(b)(2)(A) provides that applicants for admission who are "seeking admission" and not "clearly and beyond a doubt entitled to be admitted" "shall be detained" for removal proceedings. 8 U.S.C. § 1225(b)(2)(A).

The Eighth Circuit recently affirmed Respondents' position that the phrases "applicant for admission" and "seeking admission" are the same. *Avila v. Bondi*, 170 F.4th 1128, 1134–36 (8th Cir. 2026). Under *Avila*, a noncitizen present in the United States who has not been lawfully admitted is treated as an applicant for admission for

4

§ 1225(b)(2)(A) purposes, regardless of whether they were encountered at the border or within the interior. And under that statutory provision, the government can detain without bond. *See id.* at 1138 (finding the district court "erred in holding that the Government could not detain Avila without bond under § 1225(b)(2)(A)"); *see also Jennings*, 138 S. Ct. at 851 (pointing out that § 1225(b)(2) does not reference bond hearings and finding that periodic bond hearings are not required as a matter of statutory construction).

Respondents assert that Petitioner, as a noncitizen who has not been lawfully admitted, is deemed to be an applicant for admission and subject to mandatory detention without bond, no matter how far from the border he was apprehended or how long he had been living inside the country.

That is an accurate statement of § 1225(b)(2)'s meaning under *Avila*. But statutory authority to detain does not itself resolve whether the manner in which that authority is exercised comports with the Constitution. Indeed, in *Jennings*, the Supreme Court rejected a statutory construction that would have required bond hearings under § 1225(b)(2), while expressly declining to reach constitutional due process arguments. 138 S. Ct. at 851.

The constitutional analysis here demands a separate inquiry. The Fifth Amendment's Due Process Clause protects noncitizens in removal proceedings from deprivations of liberty without due process of law. *Reno v. Flores*, 507 U.S. 292, 306 (1993). Thus, even where Congress has authorized mandatory detention, this Court must still determine whether the procedures afforded satisfy the requirements of due process under the particular circumstances presented.

The question here is not whether Congress authorized Petitioner's detention under § 1225(b)(2)—it did, according to *Avila*. The question is whether Petitioner's continued detention in this case without any meaningful opportunity to obtain an individualized determination regarding the justification for that continued detention satisfies the Due Process Clause.

**B.      Constitutional Protections**

The Fifth Amendment prohibits the government from depriving any person of liberty without due process of law. U.S. Const. amend. V. That protection extends to all persons physically present within the United States, including noncitizens, regardless of whether their presence is lawful, unlawful, temporary, or permanent. *Zadvydas v. Davis*, 533 U.S. 678, 693 (2001). Although civil immigration detention is constitutionally permissible in appropriate circumstances, it must remain reasonably related to its nonpunitive purposes and must satisfy the requirements of procedural due process. *Jackson v. Indiana*, 406 U.S. 715, 738 (1972).

The process due under the Fifth Amendment depends on the particular circumstances presented. *See Smith v. Org. of Foster Fams. for Equal. & Reform*, 431 U.S. 816, 847 (1977) (recognizing that once a protected liberty interest is shown, the next step is to determine what process is due in the particular context.) That inquiry is governed by the familiar balancing framework established in *Mathews v. Eldridge*, 424 U.S. 319, 335 (1976), which considers (1) the private liberty interest affected, (2) the risk of an erroneous deprivation through the procedures used and the probable value of additional safeguards, and (3) the government's interests.

Respondents contend that no procedural due process inquiry is needed. They argue that because Petitioner is treated by statute as an applicant for admission, Congress has already determined the circumstances under which detention is required and no additional process is constitutionally necessary. The authorities they cite for this proposition do not go so far.

Respondents cite *Department of Homeland Security v. Thuraissigiam*, 591 U.S. 103 (2020). But that decision addresses the constitutional status of applicants for admission during admissibility determinations and the legal consequences of parole for immigration law purposes. It does not hold that the Executive may continue to deprive a person physically present within the United States of liberty without constitutionally adequate procedures.

Respondents also argue that because § 1225(b)(2)(A) does not make detention contingent upon dangerousness or flight risk, procedures directed toward those questions are irrelevant. Petitioner does not seek a hearing on a fact that Congress has made irrelevant to his classification under § 1225(b)(2)(A). He contends that, under the particular circumstances presented here, the Due Process Clause itself requires a meaningful opportunity to obtain an individualized determination before his continued detention may persist. That constitutional inquiry is not foreclosed by § 1225(b)(2)(A).

Neither *Demore v. Kim*, 538 U.S. 510 (2003) nor *Banyee v. Garland*, 115 F.4th 928 (8th Cir. 2024), also cited, compels a different conclusion. Those cases concerned mandatory detention under § 1226(c), arising from criminal removability, and principally rejected a claim that detention had become unconstitutional because of its duration.

Petitioner's claim is different. He does not seek a temporal limitation on detention. Instead, he challenges the complete absence of any individualized process to test whether continued detention remains justified in his case.

Applying the *Mathews* factors, Petitioner's liberty interest is substantial. Petitioner was initially detained when he first arrived at the border. The government then released him into the United States with a parole document. He spent the next few years holding gainful employment and now resides with his partner and child in Minneapolis near other family members. He has no criminal convictions and has developed cultural and religious ties to his community. Although those facts do not alter Petitioner's statutory status as an applicant for admission, they bear directly on the nature of the liberty interest at stake. Continued physical confinement under these particular circumstances constitutes a significant deprivation of liberty.

The second *Mathews* factor likewise weighs in Petitioner's favor. Respondents have never provided Petitioner any meaningful opportunity to obtain an individualized determination as to whether continued detention is justified. The government's detention decision rests solely on Petitioner's statutory classification as an applicant for admission. In addition, after Petitioner appeared in federal court on his improper entry charge, the Magistrate Judge saw fit to conditionally release him from federal custody. Whether that determination ultimately affects Petitioner's immigration custody is not the point. The point is that the existing detention procedures provide no mechanism for testing the basis for continued detention or assessing whether it remains justified under the particular circumstances of this case. That creates a substantial risk of erroneous deprivation.

The government's interests are also substantial. Congress has a legitimate and important interest in ensuring that applicants for admission appear for removal proceedings and protecting the public where appropriate. Requiring an individualized custody determination, however, does not undermine those interests. It simply requires that continued detention be supported by an individualized assessment before a neutral decisionmaker. Where, as here, Petitioner has lived in the community for years, maintained employment, and has no past convictions, the modest administrative burden associated with such a determination is outweighed by the significant private liberty interest at stake and the risk of erroneous deprivation.

Under the particular circumstances presented here, Petitioner's continued detention without any meaningful opportunity to obtain an individualized determination regarding the justification for that detention does not satisfy procedural due process. Accordingly, Petitioner's continued detention violates the Due Process Clause of the Fifth Amendment.

### C.    Fourth Amendment and Warrantless Arrest Requirements

Petitioner also raises Fourth Amendment and related statutory concerns arising from the circumstances of his warrantless arrest. Because Petitioner's continued detention violates the Due Process Clause for the reasons discussed above, those additional claims are not reached. This Court expresses no opinion regarding their merits.

### D.    Remedy

The constitutional deficiency identified here lies not in the statutory authority to detain, but in the procedures afforded regarding Petitioner's continued detention.

Although § 1225(b)(2) authorizes Respondents to detain Petitioner as an applicant for admission, that statutory authority does not eliminate the constitutional requirement that continued immigration detention satisfy due process under the particular circumstances presented.

The appropriate remedy is to require Respondents to provide the constitutionally adequate process that has been lacking. Under the existing statutory and regulatory framework, a prompt individualized custody hearing before an Immigration Judge is the appropriate means of providing that process. This relief is not constitutionally required in every case arising under § 1225(b)(2). Rather, it is warranted under the particular facts presented here, including Petitioner's release into the United States, his years spent building a life in this country, and the absence of any individualized custody determination.

Respondents shall therefore provide Petitioner with an individualized custody hearing before an Immigration Judge within seven days of this Order. At that hearing, Respondents may seek continued detention based upon an individualized showing that Petitioner presents a flight risk, a danger to the community, or another lawful basis warranting continued detention.

Petitioner's statutory classification as an applicant for admission remains relevant to Respondents' detention authority, but it does not, standing alone, resolve whether continued detention is constitutionally permissible under the circumstances presented here. If Respondents do not provide the required custody hearing within seven days, Petitioner shall be immediately released from custody.

## ORDER

Based on the foregoing, and on all the files, records, and proceedings in this case,

**IT IS HEREBY ORDERED** that:

1. Petitioner Bryan A.G.D.'s Petition for Writ of Habeas Corpus (Doc. No. 1) is **GRANTED IN PART**.

2. Petitioner's continued detention, under the particular circumstances presented here and without any meaningful opportunity to obtain an individualized determination regarding the justification for that continued detention, violates the Due Process Clause of the Fifth Amendment.

3. Within **7 days** of the date of this Order, Respondents shall provide Petitioner with an individualized custody hearing before an Immigration Judge in Minnesota. At that hearing, Respondents may seek Petitioner's continued detention based upon an individualized showing that continued custody is justified.

4. Respondents, or anyone acting in concert with Respondents, are **ENJOINED** from removing, transferring, or otherwise facilitating the removal of Petitioner from the District of Minnesota until the custody hearing required by this Order has been conducted and the Immigration Judge has issued a custody determination.

5. If Respondents do not provide the hearing required by Paragraph 3 within 7 days of the date of this Order, Petitioner shall be immediately released from custody.

6. If Petitioner is released:

   a. **Release and Return of Property.** In the event that Respondents release Petitioner, he must be released in Minnesota. At the time of Petitioner's release, Respondents shall return to Petitioner all personal property in

11

Respondents' custody or control, including but not limited to, passports, identity papers or licenses, immigration records, prescribed medications, and treatment-related equipment. Release may not be delayed for any reason related to the retrieval, processing, or return of such property. Any delay or failure to effectuate release in accordance with this paragraph constitutes noncompliance with this Order.

b. **Return to Minnesota.** If Petitioner is currently held outside Minnesota, Respondents shall initiate Petitioner's return to Minnesota for the sole purpose of effectuating release. Respondents shall not delay initiating Petitioner's return based on administrative convenience, transportation availability, or detention-capacity considerations.

c. **Weather-Related Delay.** If weather conditions present a safety risk at the time of release, Respondents may delay physical release only for the brief period necessary to ensure safe release. Any such delay must be strictly limited and may not be used to justify continued custody where a safe alternative is available.

d. **No Recharacterization of Custody.** Respondents may not administratively recharacterize the release granted by this Order as grounds to impose conditions or re-impose existing conditions in conjunction with release (including release on recognizance or similar instruments), without prior notice to and authorization from the Court, or absent a new and independently lawful custody decision properly executed under the law. For the avoidance of doubt, Respondents' compliance with this Order would require Petitioner's release in Minnesota without any newly issued instrument that either imposes new conditions of supervision or restraint or restates previously imposed conditions. Any such conditions imposed at the time of Petitioner's release shall be considered null and void as inconsistent with this paragraph.

7. **Notice.** On or before **August 6, 2026**, Respondents shall file a notice advising the Court whether they have complied with this Order. If a custody hearing has been conducted, Respondents shall report the disposition of that hearing. If Petitioner has been released, Respondents shall state the date, time, and location of the release.

8. Because the Petition is resolved on due process grounds, Petitioner's

12

remaining habeas claims are not reached.

**LET JUDGMENT BE ENTERED ACCORDINGLY.**

Date: July 27, 2026                    *s/ Jerry W. Blackwell*
Time: 5:05 p.m.                        JERRY W. BLACKWELL
                                       United States District Judge